NO. 11-99003

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LEZMOND C. MITCHELL,<br>Petitioner-Appellant,<br>v.<br>UNITED STATES OF AMERICA,<br>Respondent-Appellee. | DC NO. CV 09-8089-MHM<br><br>Panel Opinion Filed June 19, 2015, by Stephen Reinhardt, Barry G. Silverman, and Kim McLane Wardlaw, CJJ |

# PETITION FOR REHEARING AND REHEARING EN BANC

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

HILARY POTASHNER
Federal Public Defender
JONATHAN C. AMINOFF
GIA KIM
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-4408
Facsimile: (213) 894-0081

Attorneys for Petitioner-Appellant

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. THE PANEL OPINION ..... 2

III. ARGUMENT ..... 3

A. At a Minimum, Mitchell Is Entitled to an Evidentiary Hearing on His Certified Claims. ..... 3

1. Ineffective Assistance of Counsel at the Guilt Phase ..... 5

2. Ineffective Assistance of Counsel at the Penalty Phase ..... 9

B. The Panel Opinion Conflicts with the Eighth and Tenth Circuit's Standards for Granting an Evidentiary Hearing on Penalty-Phase Ineffective Assistance in a Federal Death Penalty Case. ..... 15

IV. CONCLUSION ..... 18

CERTIFICATE OF COMPLIANCE ..... 19

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Bobby v. Van Hook*,
558 U.S. 4 (2009)....................15

*Duncan v. Ornoski*,
528 F.3d 1222 (9th Cir. 2008)....................6, 8

*E & J Gallo Winery v. EnCana Corp.*,
503 F.3d 1027 (9th Cir. 2007)....................4

*Frierson v. Woodford*,
463 F.3d 982 (9th Cir. 2006)....................12

*Lopez v. United States*,
439 F.2d 997 (9th Cir. 1971)....................15

*Moore v. United States*,
571 F.2d 179 (3d Cir. 1978)....................3

*Nelson v. City of Davis*,
571 F.3d 924 (9th Cir. 2009)....................3

*Padilla v. Kentucky*,
559 U.S. 356 (2010)....................7

*Purkey v. United States*,
729 F.3d 860 (8th Cir. 2013)....................4

*Rompilla v. Beard*,
545 U.S. 374 (2005)....................7

*Sinisterra v. United States*,
600 F.3d 900 (8th Cir. 2010)....................16, 17

*Strickland v. Washington*,
466 U.S. 668 (1984)....................2, 11

*United States v. Barrett*,
797 F.3d 1207 (10th Cir. 2015)....................16, 17

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*United States v. Burrows*,
872 F.2d 915 (9th Cir. 1989) .......... 9

*United States v. Hearst*,
638 F.2d 1190 (9th Cir. 1980) .......... 3

*United States v. Howard*,
381 F.3d 873 (9th Cir. 2004) .......... 3

*United States v. Mitchell*,
502 F.3d 931 (9th Cir. 2007) .......... 1

*United States v. Poindexter*,
492 F.3d 263 (4th Cir. 2007) .......... 4

*United States v. Rodrigues*,
347 F.3d 818 (9th Cir. 2003) .......... 4

*Wiggins v. Smith*,
539 U.S. 510 (2003) .......... 8, 10

## FEDERAL STATUTES

18 U.S.C. § 3005 .......... 8

28 U.S.C. § 2255 .......... *passim*

Federal Death Penalty Act of 1994 .......... 1

## OTHER AUTHORITIES

*ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (rev. ed. Feb. 2003) .......... 1, 7

## I. INTRODUCTION

Lezmond Mitchell, a Navajo, was convicted and sentenced to death in Arizona district court for the carjackings resulting in death of two Navajo victims on Navajo land. A divided panel of this Court affirmed his convictions and death sentence on direct appeal,[1] and, in this case, a divided panel of this Court affirmed the denial of his motion to vacate the sentence under 28 U.S.C. § 2255. Both panel rehearing and rehearing en banc are warranted because this proceeding -- the first Section 2255 case in this Court involving a death sentence under the Federal Death Penalty Act of 1994 -- presents three questions of exceptional importance: (1) whether the panel majority viewed the facts in the light most favorable to Mitchell and refrained from resolving genuine issues of material fact, as required when a Section 2255 motion has been denied without a hearing; (2) whether defense counsel's performance fell short of prevailing professional norms, in a case tried after the issuance of the 2003 ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases; and (3) whether the panel opinion conflicts with the authoritative decisions of the Eighth and Tenth Circuits granting evidentiary hearings on similar records and thus substantially affects Section 2255's application in federal death penalty cases, an issue on which there is an overriding need for national uniformity.

---

[1] *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007).

## II. THE PANEL OPINION

The panel majority rejected Mitchell's certified claims of ineffective assistance of counsel at both the guilt and penalty phases of his capital trial. As to both claims, the panel majority concluded that Mitchell had not shown that his attorneys had performed deficiently within the meaning of *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984), and that counsel made reasonable strategic choices after adequate investigations of intoxication as a guilt-phase defense and Mitchell's social history, substance abuse, and mental health as possible mitigation theories. (Maj. Op. at 10-26.) It did not reach the question of *Strickland* prejudice, 466 U.S. at 691-96, for either claim. The panel majority further concluded that Mitchell was not entitled to an evidentiary hearing because "[t]he material facts -- that is, what Mitchell's lawyers *did*, what they *didn't* do, and *why* -- are not disputed." (Maj. Op. at 10.)

In a lengthy dissent, Judge Reinhardt countered that defense counsel performed deficiently in the penalty phase in two independent ways. (Dissent at 35.) First, defense counsel unreasonably chose to present an anemic "good guy" defense in lieu of substantial mitigating evidence concerning Mitchell's abusive childhood, substance abuse issues, and mental health problems. (Dissent at 35-44.) Second, defense counsel premised their decision on an unreasonably truncated investigation into these classic areas of mitigation, despite being on notice of promising leads. (Dissent at 44-56.) Because Judge Reinhardt concluded that

there was a reasonable probability that a properly investigated and presented mitigation case would have convinced at least one juror to reject a death sentence, he would have granted penalty-phase relief. (Dissent at 56-59.)

## III. ARGUMENT

### A. At a Minimum, Mitchell Is Entitled to an Evidentiary Hearing on His Certified Claims.

Under Section 2255, an evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). The Section 2255 standard for a hearing is a "low threshold," *United States v. Howard*, 381 F.3d 873, 883 (9th Cir. 2004), that is "essentially" equivalent to "whether the movant has 'stated a claim on which relief could be granted,' *Moore v. United States*, 571 F.2d 179, 184 (3d Cir. 1978) -- or, where affidavits have been submitted, whether summary judgment for the government is proper." *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980). Under the traditional summary judgment standard in civil cases, "[a] district court has the responsibility to construe all facts in the light most favorable to the non-moving party," rather than weighing disputed evidence or making credibility determinations with respect to statements made in affidavits or depositions. *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009). Summary judgment is appropriate "only where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law.'" *E & J Gallo Winery v. EnCana Corp.*, 503 F.3d 1027, 1033 (9th Cir. 2007).

This duty to construe the facts in the light most favorable to the non-moving party extends to this Court. *E& J Gallo Winery*, 503 F.3d at 1033. Thus, "[w]hen the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment," and the court of appeals should "review the facts in the light most favorable to the § 2255 movant." *See United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007). Although the district court's denial of a post-conviction evidentiary hearing is reviewed for abuse of discretion, *United States v. Rodrigues*, 347 F.3d 818, 823 (9th Cir. 2003), this standard is "somewhat misleading, . . . because review of the determination that no hearing was required obligates [this Court] to look behind that discretionary decision to the court's rejection of the claim on its merits, which is a legal conclusion that [this Court] review[s] de novo." *Purkey v. United States*, 729 F.3d 860, 869 (8th Cir. 2013).

Here, in numerous respects, the panel majority did not view the facts in the light most favorable to Mitchell, the non-moving party, and tacitly resolved genuine issues of material fact and made credibility determinations throughout its opinion. The panel majority dismissed the need for an evidentiary hearing because it concluded that the material facts, including Mitchell's attorneys' reasons for acting as they did, were not in dispute. (Maj. Op. at 10.) It is true that whether

Mitchell's lawyers retained certain experts or interviewed certain witnesses is, for the most part, undisputed, though there exist significant questions regarding the handling of those experts. But the overarching questions of whether Mitchell's lawyers pursued or abandoned particular theories of the case, and "*why*," were in fact hotly disputed. In particular, Mitchell argued that, in many instances, one attorney's claim of a strategic decision was belied either by the record or the testimony of another attorney. It is only by crediting select portions of the depositions of Mitchell's three defense attorneys, even when they contradicted each other or the record of trial proceedings, that the panel majority elides the factual disputes that necessitate a hearing.

### 1. Ineffective Assistance of Counsel at the Guilt Phase

From start to finish, the panel majority views the facts in the light least favorable to Mitchell in reaching its conclusion that Mitchell's attorneys' did not perform deficiently. Contrary to the panel majority's portrayal of defense counsel's extensive experience (Maj. Op. at 10-11), Mitchell established that none had ever tried a federal capital case before a jury, and Gregory Bartolomei, the attorney who bore primary responsibility for the penalty phase, had no capital litigation experience. (ER 3969, 4088, 4091, 4112, 4120-4121.) The overall experience of the Arizona Federal Public Defender Office in Indian reservation cases is irrelevant because, as the majority itself notes, the death-eligible charge

was carjacking resulting in death, for which it "does not matter that the crime occurred in Indian country[.]" (Maj. Op. at 5, 11.)

The panel majority also minimizes the extent of intoxication evidence in the record. Although the majority opinion makes passing reference to Mitchell's "statements to FBI agents about his *substance abuse*" (Maj. Op. at 11, emphasis added), the fact is that Mitchell gave four statements, over the course of twenty-five days, about his *intoxication* on or about the date of the offenses. (ER 1882-1896, 1897, 1900, 1902-1903.) In two of these statements, Mitchell specifically stated that he was extremely intoxicated, to the point of blackouts and memory loss, at the time of the murders. (ER 1882-1896, 1900.) The government repeatedly acknowledged that the record contained evidence that the defendants had been drinking. (ER 102, 513, 516, 1050.) Mitchell's later denials of intoxication were therefore not sufficient reason to forego an investigation of the intoxication defense. Although strategic decisions based on information provided by the client may be reasonable and entitled to deference, "counsel must consider all of the defendant's statements, not just those that make his job easier," especially when confronted with "glaring inconsistencies." *Duncan v. Ornoski*, 528 F.3d 1222,1239 (9th Cir. 2008).

The cursory intoxication investigation that counsel conducted did not satisfy prevailing professional norms. The panel majority makes much of the fact that defense counsel looked at crime-scene photographs and visited the scene. (Maj.

Op. at 11.) But when faced with a record indicating that evidence had been removed from the crime scene (ER 765-768), counsel could not have reasonably thought this investigation sufficient. Further, at the time of Mitchell's trial, prevailing professional norms demanded that "[t]he assistance of an investigator who has received specialized training." *ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (rev. ed. Feb. 2003), cmt. to Guideline 4.1 ("2003 ABA Death Penalty Guidelines"). ABA standards are "'guides to determining what is reasonable,'" *Rompilla v. Beard*, 545 U.S. 374, 387 (2005), and may be "valuable measures of the prevailing professional norms of effective representation[.]" *Padilla v. Kentucky*, 559 U.S. 356, 367 (2010). The 2003 ABA Death Penalty Guidelines are not cited in the majority opinion. These guidelines indicate that, at the time of Mitchell's trial, "the prevailing national standard of practice forb[ade] counsel from shouldering primary responsibility for the investigation" because "[c]ounsel lacks the special expertise required to accomplish the high quality investigation to which a capital defendant is entitled and simply has too many other duties to discharge in preparing the case." 2003 ABA Death Penalty Guidelines, cmt. to Guideline 4.1. Yet the defense team's nominal fact investigator, Karl Brandenberger, played virtually no substantive role in this or any other facet of the guilt-phase investigation. (ER 3270-3271.)

The panel majority erroneously concluded that Mitchell's attorneys reasonably abandoned a guilt-phase intoxication defense at an early stage because

it lacked evidentiary support. (Maj. Op. at 12.) This conclusion was presumably based on the deposition of Jeffrey Williams, who testified that he thought an intoxication defense "wasn't even close." (ER 3941.) But, crucially, Williams also testified that he did not select the guilt-phase strategy; John Sears, who served as the "learned counsel" required by statute,[2], did. (ER 4012.) And Sears testified that he never considered an intoxication defense after Mitchell denied being intoxicated -- a fact not mentioned in the majority opinion. (ER 4128-4129.) But in the face of "glaring inconsistencies" in a defendant's statements, it is "unreasonable" for defense counsel to "rely on any one of [those] statements in isolation when making tactical decisions about investigating the crime." *Duncan*, 528 F.3d at 1239. Although the panel majority suggests that Mitchell's attorneys based their decision to forego an intoxication defense in part on "the strong circumstantial evidence to the contrary" (Maj. Op. at 12), none of Mitchell's attorneys cited any such reason as a factor in their decision-making. This supposedly strategic decision thus "resembles more a *post hoc* rationalization of counsel's conduct than an accurate description of their deliberations . . . ." *Wiggins v. Smith*, 539 U.S. 510, 526-27 (2003).

Further, Sears also testified that the defense team affirmatively decided not to present "anything related to intoxication" in the guilt phase because it would

---

[2] *See* 18 U.S.C. § 3005.

undermine the "good person led astray" defense -- another fact not mentioned in the majority opinion. (ER 4128-4129.) But the trial record shows that Mitchell's attorneys never in fact abandoned the intoxication defense; in fact, Williams requested a jury instruction on intoxication once trial was well underway, and Sears attempted to elicit evidence of drinking from the case agent to support that request. (ER 675, 839.) The panel majority found no tension between these actions and counsel's claims of a strategic decision to avoid a counterproductive intoxication defense. (Maj. Op. at 12 & n.3.) In light of these inexplicable contradictions, Mitchell's allegation of ineffective assistance of counsel is not "so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989). Rather, these disputed material facts on key points -- whether Mitchell's defense attorneys made a concerted decision to jettison the intoxication defense and why -- necessitate an evidentiary hearing.

**2. Ineffective Assistance of Counsel at the Penalty Phase**

As with its treatment of Mitchell's guilt-phase claim, the panel majority overlooked significant factual disputes that, at a minimum, require an evidentiary hearing in this case. These disputes reflect a stark conflict as to which mitigation theories defense counsel actually prepared and presented to the jury and the reasons for abandoning those theories that were not presented.

The panel majority concluded that defense counsel reasonably decided, after constitutionally adequate investigation, to avoid a substance abuse mitigation defense for fear of alienating the jury. (Maj. Op. at 17-18.) In support of this finding, the panel majority cites Sears's deposition testimony stating that the juror questionnaires revealed that the jury would be unsympathetic to "excuses," such as mental problems or substance abuse. (Maj. Op. at 17-18.) The actual juror questionnaires for the seated jurors and alternates tell a different story, however. (SER 6-357.) The questionnaires did not ask about jurors' view of mental illness or of "excuses" for criminal behavior more generally. (SER 6-357.) And while the questionnaires did ask about prospective jurors' experience with substance abuse, none of the prospective jurors indicated any hostility toward the subject, and several prospective jurors expressed sympathy for, or an understanding of, addicts. (SER 380, 384-385, 389-390, 405-406, 410-411, 414.) In any event, while the questionnaire and voir dire responses may have conceivably justified a last-minute decision to forego *presenting* a substance-abuse mitigation defense, they could not justify the decision to stop *investigating* such a defense, which occurred much earlier. The utter absence of anti-"excuses" sentiment in the record reveals this so-called strategic reason to be another "*post hoc* rationalization of counsel's conduct." *Wiggins*, 539 U.S. at 526-27.

The panel majority also silently resolves a fundamental factual dispute as to which mitigation theories defense counsel actually presented. The panel majority

concluded that defense counsel assiduously avoided presenting evidence of alcohol and drug abuse at the penalty phase, because such evidence would be viewed as a "poor excuse" for the crimes and would undermine "the more positive picture they wanted to paint." (Maj. Op. at 17.) But, as the dissent correctly notes, this supposed strategic decision did not stop defense counsel from eliciting evidence of Mitchell's heavy drinking at the penalty phase, obtaining a jury instruction on the statutory mitigating factor of impaired capacity, and arguing in closing that Mitchell was drunk to the point of blacking out during the offenses. (Dissent at 47-48.) While Mitchell agrees with the dissent that the record is sufficient to reject the claimed strategic decision as another *post hoc* rationalization, the clear conflict between what his attorneys did and what his attorneys later said they did at least merits a hearing to fairly assess defense counsel's performance, without the "distorting effects of hindsight," *Strickland*, 466 U.S. at 689.

The panel majority's erroneous conclusion that defense counsel made a conscious strategic decision to use the Navajo Nation's opposition to capital punishment as a primary mitigation theme exemplifies its topsy-turvy interpretation of the record. (Maj. Op. at 22.) The defense never sought a jury instruction on the Navajo Nation's stance, and the seven jurors who found it mitigating had to write it in. (SER 452, 460.) Moreover, the Navajo Nation letter was not the product of defense counsel's investigative efforts; it was turned over by the prosecution as potential *Brady* material on the day before the penalty phase

began. (ER 968-969.) The defense attorneys had erroneously assumed that the Navajo Nation did not oppose the imposition of the death penalty in Mitchell's case and therefore did not pursue the issue. (ER 4176.) With respect to the Navajo Nation's position on the death penalty, as in so many other areas of mitigation, Mitchell's attorneys unreasonably curtailed investigation by prematurely deciding that a particular route would be unproductive.

A major factual dispute also centers on whether defense counsel fully appreciated the scope of potential mitigation in a death penalty case. The panel majority relies on the social history report prepared by mitigation specialist Vera Ockenfels to support its view of counsel's adequate investigation of social history and substance abuse theories. (Maj. Op. at 13-14, 22.) But Ockenfels herself believed that Mitchell's attorneys had an unusually limited conception of mitigation. (ER 3306.) Ockenfels stated that Mitchell's attorneys, to her surprise, "treated mitigation as distinctly separate from the guilt phase, rather than an integral part of both the guilt and penalty phases of the trial." (ER 3305.) Ockenfels also reported that Bartolomei informed her that the defense team had rejected a substance abuse or intoxication mitigation theory in light of Mitchell's denial of intoxication (ER 3307), which reflected a fundamental failure to comprehend that a history of substance abuse constituted an "important mitigating factor" in its own right. *See Frierson v. Woodford*, 463 F.3d 982, 994 & n.12 (9th Cir. 2006). The fact that defense counsel disregarded Ockenfels's

recommendations to consult a psychopharmacologist or forensic psychologist to develop or present the mitigation leads that she had uncovered also undercuts the panel majority's heavy reliance on her report. (ER 3307-3308.)

The panel majority's treatment of Dr. Barry Morenz's psychiatric report also tacitly resolves disputed issues of material fact. The panel majority stated that "Dr. Morenz did not recommend further testing" of the deficits in executive functioning, impulsiveness, and poor planning revealed by neuropsychological testing and even questioned whether "there [was] any further testing that could have been done." (Maj. Op. at 16.) But as noted by the dissent, Dr. Morenz actually advised that a PET scan could corroborate the frontal lobe abnormalities found by the neuropsychologist, Anne Herring. (ER 3152; Dissent at 53-54.) And the panel's finding that defense counsel discussed Morenz's report with him masks yet another factual dispute: Bartolomei vaguely recalled discussing the report with Morenz, but Morenz unequivocally stated that none of Mitchell's attorneys ever contacted him after he filed his report. (ER 3579, 4079.)

As the dissent points out, the panel majority's reliance on the purported evaluation of psychologist Susan Parrish is misplaced. (Dissent. at 53 n.21.) To support its conclusion that defense counsel adequately investigated Mitchell's mental health, the panel majority repeatedly asserts that Dr. Parrish diagnosed Mitchell as a sociopath. (Maj. Op. at 7, 14, 23.) Again, this tacit finding is presumably based on the deposition testimony of Williams, who thought that

Parrish had diagnosed Mitchell as sociopathic. (ER 3926.) But Williams took care to bookend his discussion of Parrish with advisements that "Greg [Bartolomei] could probably tell you better" about Parrish's role because Bartolomei, and not Williams, had handled the penalty phase. (ER 3925-3926.) Bartolomei, for his part, described Parrish's role as one of consultation and coordination, not diagnosis, and he did not think that Parrish ever made a DSM-IV assessment of Mitchell. (ER 4034-4035.) And there is no evidence that Dr. Parrish conducted "extensive testing." (Maj. Op. at 23.) The most Bartolomei could say is that he thought Parrish met with Mitchell. (ER 4034.) By omitting the contrary evidence in the record, the panel majority not only failed to view the facts in the light most favorable to Mitchell, it effectively weighed disputed evidence and made impermissible credibility determinations.

In short, the record is replete with evidence that rebuts the majority's positive portrayal of defense counsel's performance in the penalty phase. Jail records, not mentioned by the panel majority, indicate that counsel did not spend "countless hours . . . with Mitchell." (Maj. Op. at 22.) Rather, the three defense attorneys together spent about 48 hours visiting Mitchell in the sixteen months before trial, or an average of about one hour per attorney per month. (ER 3628-3648.) The panel majority also cites the defense attorneys' consultation of attorneys specializing in death penalty defense as further proof of their exhaustive efforts. (Maj. Op. at 22.) But the majority opinion does not mention that those

seasoned death penalty attorneys, including a colleague in the Arizona Federal Public Defender's Office, filed declarations in the Section 2255 proceedings stating that trial counsel's mitigation investigation was inadequate -- powerful evidence that their efforts did not measure up to "the prevailing professional practice at the time of the trial," *Bobby v. Van Hook*, 558 U.S. 4, 17 (2009). (ER 3281-3283, 3267-3269.)

### B. The Panel Opinion Conflicts with the Eighth and Tenth Circuit's Standards for Granting an Evidentiary Hearing on Penalty-Phase Ineffective Assistance in a Federal Death Penalty Case.

Rehearing en banc is also warranted because the panel majority held Mitchell to an inappropriately high standard to avoid summary dismissal under Section 2255. The panel majority never recited or purported to apply the standard set forth in the statute itself, which mandates a "prompt hearing" "[u]nless the motion and files and records of the case *conclusively* show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b) (emphasis added) -- a standard which can be met even if it is "quite improbable that [a] motion is in fact meritorious." *Lopez v. United States*, 439 F.2d 997, 999 (9th Cir. 1971). Notably, the Eighth and Tenth Circuits have ordered evidentiary hearings in federal death penalty cases where, as here, trial counsel elected to present a "good guy" defense at the penalty phase, to the exclusion of available mitigating evidence regarding a troubled background, substance abuse, or mental health problems. In doing so, these courts of appeal did not consider whether the Section 2255 petitioner could necessarily or

even probably establish deficient performance and prejudice. Rather, these courts considered only whether the record "affirmatively refute[d]" the ineffective assistance claims, *Sinisterra v. United States*, 600 F.3d 900, 907 (8th Cir. 2010), whether the claims were substantive enough to "merit[] further review," *id.*, and whether the petitioner "*may* be entitled to relief" on his claims. *United States v. Barrett*, 797 F.3d 1207, 1211 (10th Cir. 2015) (emphasis added).

In *Sinisterra*, the Eighth Circuit remanded for an evidentiary hearing on a record that is strikingly similar to the record in this case. 600 F.3d at 903. As in *Sinisterra*, Mitchell was represented by attorneys who split responsibility for the guilt and penalty phases of trial and were not always on the same page. *Id.* at 903-04, 907. As in *Sinisterra*, the roles of defense attorney, fact investigator, and mitigation investigator were not clearly defined. *Id.* at 904. As in *Sinisterra*, counsel arranged for a pre-trial psychiatric evaluation but did not pursue mental health issues despite receiving a neuropsychologist report indicative of possible brain damage resulting in increased impulsivity. *Id.* at 905. As in *Sinisterra*, defense counsel made an early decision to portray the defendant as "a good worker and a good person," and therefore did not delve into issues of abuse, family discord, or mental health issues. *Id.* at 904-07. Ten mitigation witnesses, mostly friends and family members speaking in support of the "good guy" approach, testified at both Sinisterra's and Mitchell's respective penalty phases, with additional family testimony recorded on videotape. *Id.* at 904. (ER 966, 1008.)

The Eighth Circuit held that this record did "not conclusively show that Sinisterra's attorneys acted within the range of competence demanded of attorneys in criminal cases," and it remanded for a hearing on deficient performance and prejudice accordingly. *Id.* at 907-08.

Likewise, in *Barrett*, the Tenth Circuit remanded for an evidentiary hearing on ineffective assistance at the penalty phase of a federal capital trial. 797 F.3d at 1224. As in Mitchell's case and *Sinisterra*, defense counsel presented approximately ten family members, friends, and acquaintances to testify that the defendant was "a loved family member and good person," as well as a "good mechanic and a nonviolent person." *Id.* at 1224. None of the mitigation witnesses "discussed Defendant's mental health or troubled background in any significant detail," and the "good guy" defense "apparently helped to some extent" because some jurors found some mitigating factors to be true. *Id.* Nevertheless, the Tenth Circuit concluded that the record sufficiently supported Barrett's claims of inadequate investigation of mental health evidence and social history mitigation to warrant a hearing even if the "good guy" theory was otherwise reasonable and effective: "[A]n uninformed choice is not a reasonable tactical decision . . . . Defendant's trial attorneys had an obligation to investigate carefully before setting out on a course of action, and there is evidence that they did not do so." *Id.* at 1229. Mitchell has proffered an equivalent amount of evidence of deficient

performance, and he is equally entitled to prove his claims of ineffective assistance in an evidentiary hearing.

## IV. CONCLUSION

For the foregoing reasons, appellant respectfully requests that this case be reheard or reheard en banc.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

JONATHAN C. AMINOFF
Deputy Federal Public Defender

DATED: October 2, 2015 By *s/ Gia Kim*
GIA KIM
Deputy Federal Public Defender
Attorneys for Petitioner-Appellant

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(c)(2), Circuit Rule 35-4, and Circuit Rule 40-1(a), I certify that this petition is proportionally spaced, has a typeface of 14 points or more, and contains 4,196 words.

DATED: October 2, 2015

*s/ Gia Kim*
GIA KIM

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2015, I electronically filed the foregoing **PETITION FOR REHEARING AND REHEARING EN BANC** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED: October 2, 2015

*s/ Carmen I. Kelly*
CARMEN I. KELLY